UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH BLACKMER,

        Petitioner,        Case No. 1:16-cv-886

v.        Honorable Janet T. Neff

KATHY GRIFFIN,

        Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner Joseph Blackmer presently is incarcerated at the Miami Correctional Facility in Bunker Hill, Indiana.  He is serving a sentence of 90 years' imprisonment in Indiana:

> On June 9, 1982, Blackmer was charged with rape as a class A felony, criminal deviate conduct as a class A felony, and two counts of criminal confinement as a class B felony.  He pleaded guilty but mentally ill pursuant to a written plea agreement before the Elkhart Superior Court on September 9, 1982, and was sentenced on October 21, 1982 to serve forty years for rape, forty years for criminal deviate conduct and ten years for criminal confinement, all of which was to be served consecutively.

*Blackmer v. State*, No. 20A04-0607-CR-387, 2007 WL 2034436, at *1 (Ind. Ct. App. July 17, 2007). The conviction and sentence he challenges in this petition are more recent, but the criminal act occurred before the Indiana offenses:

> On December 17, 1981, [Petitioner] sexually assaulted the victim at gunpoint. The victim did not know [Petitioner].  Because there were no leads or suspects, the police closed the case in March 1982.  In June 1982, [Petitioner] traveled to Indiana for his employment.  While there, he committed another sexual assault for which he was arrested, convicted, and sentenced to 90 years of incarceration in Indiana.  In May 2011, the police in Grand Rapids learned that the Combined DNA Index System database identified a match between DNA obtained from the sexual assault kit completed in this case and [Petitioner], who was still incarcerated in Indiana. [Petitioner] was extradited to Michigan under the Interstate Agreement on Detainers, MICH. COMP. LAWS § 780.601, and on May 17, 2013, an information charging [Petitioner] with one count of CSC–I was filed in Kent Circuit Court.

*People v. Blackmer*, 870 N.W.2d 579, 580 (Mich. Ct. App. 2015).  Petitioner moved to dismiss the case as untimely, claiming the prosecution was barred by the statute of limitations.  *Id.*  The trial court denied the motion.  Petitioner entered a plea of guilty conditioned on his right to appeal the denial of the motion to dismiss.  (Pet., ECF No. 1, PageID.6.)  The trial court sentenced Petitioner to a term of 25 years to 80 years' imprisonment.

In a published opinion dated February 10, 2015, the Michigan Court of Appeals affirmed the trial court's denial of Petitioner's motion to dismiss. Petitioner applied for leave to appeal to the Michigan Supreme Court. That application was denied by order entered July 28, 2015. (Mich. Ord., ECF No. 1-1, PageID.64.) Petitioner did not file a petition for certiorari in the United States Supreme Court. (Pet., ECF No. 1, PageID.3.)

In his habeas application, filed on or about July 13, 2016, Petitioner raises the same issue he raised in his motion to dismiss, on appeal in the Michigan Court of Appeals, and in his application for leave to appeal in the Michigan Supreme Court: Petitioner was denied Due Process of Law in violation of the Fifth and Fourteenth Amendments to the United States Constitution when the State of Michigan applied Ex Post Facto, legal authorities to prosecute Petitioner for an offense under an expired statute of limitations. (*Id*. at PageID.6.) As set forth fully below, no matter how many federal constitutional terms Petitioner uses when he states his claim, it is actually a state law issue not cognizable on habeas review. To the extent there is a federal constitutional claim in the single issue Petitioner raises, that claim has no merit.

## Discussion

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on

the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal

court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. At 1375 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

At the heart of Petitioner's challenge to his conviction and sentence is the statute of limitations for criminal sexual conduct offenses or, more accurately, the change in that statute that occurred long after Petitioner committed the crime. The Michigan Court of Appeals described the change as follows:

> When the crime in this case was committed, the applicable statute of limitations stated:
>
>> An indictment for the crime of murder may be found at any period after the death of the person alleged to have been murdered; indictments for the crimes of kidnapping, extortion, assault with intent to commit murder and conspiracy to commit murder shall be found and filed within 10 years after the commission of the offense; all other indictments shall be found and filed within 6 years after the commission of the offense; but any period during which the party charged was not usually and publicly resident within this

> state shall not be reckoned as part of the time within which the respective indictments shall be found and filed.
>
> [MICH. COMP. LAWS § 767.24, as amended by 1954 PA 100.]
>
> The extension of the period of limitations with respect to victims of [first-degree criminal sexual conduct] to more than six years did not occur until 2001. *See* 2001 PA 6. But this amendment could not revive a charge for which the limitations period had already run. *See People v. Russo*, 487 N.W.2d 698 (1992). The six-year period of limitations that was applicable at the time the crime was committed in this case expired in 1987 unless the statute was tolled because defendant "was not usually and publicly resident within this state" between 1982 and 2013. Former MICH. COMP. LAWS § 767.24.

*Blackmer*, 870 N.W.2d at 581 (footnote and parallel citation omitted).[1] Petitioner does not disagree with the court of appeals' statement of the history of the statute or its applicability; instead, he contends the statute of limitations was not tolled, and it expired because he was "usually and publicly resident within this state" even during his incarceration in Indiana. *Id.* ("Defendant argues that despite his incarceration in Indiana between 1982 and 2013, the nonresident tolling provision does not apply because he intended to return to Michigan.").

Certainly, the extension of a statute of limitations for criminal prosecutions after expiration may violate the Ex Post Facto Clause of the United States Constitution. *See Stogner v. California*, 539 U.S. 607, 632-33 (2005). The extension of a limitations period before that period has run, however, does not violate the Ex Post Facto Clause. *See U.S. v. Knipp*, 963 F.2d 839, 844 (6th Cir. 1992) (citing cases). Whether Petitioner's conviction and sentence are constitutionally valid, therefore, turns on whether Petitioner was or was not usually and publicly resident in the State of Michigan during the 31 years he was incarcerated in the State of Indiana.

The Michigan Court of Appeals resolved that question as follows:

---

[1] The 2001 amendment to the statute of limitations added first-degree criminal sexual conduct as an offense for which an indictment could be "found and filed at any time." 2001 Mich. Pub. Acts 6.

> The plain language of the former MICH. COMP. LAWS § 767.24 is clear and unambiguous. *People v. Crear*, 618 N.W.2d 91 (2000), overruled in part on other grounds by *People v. Miller*, 759 N.W.2d 850 (2008). The statute must be applied as written, and judicial interpretation is not required or permitted. *People v. Gardner*, 753 N.W.2d 78 (2008). Further, "all undefined 'words and phrases shall be construed and understood according to the common and approved usage of the language[.]'" *People v. Laidler*, 817 N.W.2d 517, 523 (2012), quoting MICH. COMP. LAWS § 8.3a (alteration in original). To ascertain the ordinary meaning of undefined words in a statute, a court may consult a dictionary. *Laidler*, 817 N.W.2d at 523 (citation omitted). The word "usual" means "customary or habitual"; the word "publicly" means, in this context, "open to the view of all"; and the word "resident" means "dwelling in a place." *See* Random House Webster's College Dictionary (1992). In sum, the plain and unambiguous language of the nonresident tolling provision at issue provided that the limitations period was tolled for any period in which a defendant was not customarily and openly living in Michigan. Defendant's subjective intent is irrelevant to this definition. *See People v. Breidenbach*, 798 N.W.2d 738, 744 (2011) ("[A] court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself.") (citation and quotation marks omitted). The facts of this case patently show that defendant did not customarily and openly live in Michigan between 1982 and 2013; therefore, the trial court properly determined that the period of limitations was tolled from the time defendant left Michigan in 1982, and the court properly denied defendant's motion to dismiss.

*Blackmer*, 798 N.W.2d at 581 (parallel citations omitted). Petitioner argues that the state court's decision is wrong as a matter of state law. He complains that the decision is inconsistent with Michigan civil cases defining residence for other purposes. (Pet., ECF No. 1, PageID.7) It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).

Petitioner then states conclusorily that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. (Pet., ECF No. 1, PageID.7.) The only federal precedent Petitioner cites is *Stogner*, 539 U.S. at 607. *Stogner* is inapplicable because there is no extension of an expired statute of limitation. Petitioner states, in the alternative, that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented. (Pet., ECF No. 1, PageID.7.) The undisputed evidence shows that Petitioner was in the State of Indiana from June of 1982 until his extradition to Michigan in 2013. *Blackmer*, 870 N.W.2d at 580. On that record, the state court's conclusion that Petitioner was not usually and publicly resident in Michigan, based on the common meaning of those terms, is patently reasonable. Put simply, Petitioner's habeas challenge has no merit.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat

anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:  September 15, 2016             /s/ Janet T. Neff
                                                               Janet T. Neff
                                                               United States District Judge